## No. 9288.

## INDUSTRIAL COMMISSION ET AL. v. MARYLAND CASUALTY COMPANY.

CONTRACT—*Construed.* Contract for the excavation of a tunnel, the mine owner reserving no more control of the work than necessary to enable him to secure due performance of the contract, creates the relation of independent contractor, and not that of master and servant.

Mere suggestions of the mine owner as to matters of detail, adopted and followed by the contractor, as a concession, and not as a matter of obligation, do not change the result. Nor does the occasional employment by the mine owner of miners working under his control, in order to hasten the work.

*Error to Denver District Court, Hon. John. A. Perry, Judge. En banc.*

Hon. LESLIE E. HUBBARD, attorney general; Mr. JOHN L. SCHWEIGART, assistant; Mr. STEPHEN W. RYAN, Mr. M. F. RYAN, for plaintiffs in error.

Messrs. SMITH, BROCK & FERGUSON, Mr. JOHN P. AKOLT, for defendant in error.

Opinion by Mr. Justice Teller.

THIS cause is before us to review a judgment of the District Court setting aside an award by the Industrial Commission in favor of said Reddy, and directing that the claim be dismissed.

It appears from the record that said Catherine Reddy was the aunt of John O'Mera, who was killed in a mine near Leadville, and that she makes claim, as a dependent upon the deceased, for compensation from one Weaver, the owner of the mine, and said Casualty Company.

O'Mera, at the time of the accident, was working in a tunnel being driven by Larson and O'Neil on the property of Weaver, under a contract in the words and figures following:

"This Agreement: Made and entered into this 10th day of December, A. D. 1915, between C. H. Weaver, party of

the first part, and Gus Larson and James O'Neil, parties of the second part, all of the County of Lake, State of Colorado.

Witnesseth:    That whereas first party is desirous of securing the driving of the 'Anderson Tunnel' in Birdseye Gulch, and second parties are desirous of driving said tunnel,

Now, therefore, second parties agree to drive said tunnel 500 feet from the present breast of said tunnel, 5 feet wide by 7½ feet high in the clear, in such direction and on such grade as shall be directed by the engineer in charge, timbering where necessary.    To drive a water ditch under the track 10 inches deep by 20 inches wide, and install all track, timbers, air pipe and ventilation pipe.    To furnish all fuse, caps, powder and candles used in said work, and keep the boarding house supplied with wood and water.    To do all work in a minerlike fashion and maintain all work driven under this contract until the completion of said contract. To maintain all tools and machinery in as good condition as when furnished, ordinary wear and tear excepted.    To work continuously from this date with three shifts employed at all times underground.

In Consideration Whereof:    First party agrees to furnish all tools, timbers and supplies except as above mentioned, furnish blacksmith, and keep the dump in condition for dumping dirt and rock at all times.    To maintain a boarding house and board all the men engaged on said contract for $1 a day per man.    In case of the discharge of any man or men in the employ of the contractors, to pay same forthwith and deduct the amount from the next settlement with the contractors.    To pay for said work $11 per linear foot until such time as plant is installed for the operation of power, after which time the price shall be $7.50 per foot, said payments to be made on or before the 5th day of each calendar month for all work completed before the end of the preceding calendar month.    It is agreed that first party shall retain 20% of the contract price until

the completion of said contract as a guarantee for the completion of said contract.

                    C. H. WEAVER,
                    GUS LARSON,
                    JAMES O'NEIL."

On the hearing before the commission evidence was introduced to show that, despite the contract, Larson and O'Neil were not independent contractors, but mere employees of Weaver and his partners.  This evidence consisted of statements as to conversations with Weaver, and acts of control exercised over the work by Anderson, one of the partners of Weaver, and one Campbell, who succeeded Anderson in the general superintendence of the mine; also by an engineer who came occasionally to the mine to see that the tunnel was run on proper lines.  There was evidence also of an alleged usage which claimants contended changed the terms of the contract.  From this the commission found that Larson and O'Neil were employees of Weaver, and that consequently O'Mera was also one of his employees.

The District Court held that the contract was plain and unambiguous, and hence evidence as to what was said of and about it was not admissible; and further that the evidence, if admissible, did not change the effect of the contract.

In this we think the court was right.  The contract provides for the doing of a specific thing by the parties of the second part, for an expressed consideration, and gives to the party of the first part the right to withhold 20% of the compensation till the work is completed.  It contains no reservation of any control of the work more than is necessary to insure its producing the result provided for.

In *Good v. Johnson*, 38 Colo. 440, 88 Pac. 439, 8 L. R. A. (N. S.) 1896, this court determined that one was an independent contractor, and not a servant, from the fact that the contract gave no right of control other than that which would secure the proper result from the work.  Under the

rule adopted in that case, none of the things which Weaver or Anderson was said to have done was sufficient to sustain the contention of plaintiffs in error.

There is abundant authority for the above mentioned holding: *Casement v. Brown,* 148 U. S. 615, 37 L. Ed. 582, 13 Sup. Ct. 672; *Pottorff v. Mining Co.,* 86 Kans. 774, 122 Pac. 120; *Foster v. Chicago,* 197 Ill. 264, 64 N. E. 322, and Labatt's Master and Servant, 2nd Ed., Sec. 25.

In this case it is evident that when Larson or O'Neil followed the directions of Anderson or Campbell regarding the work, it was done as a concession and not as a matter of contract obligation. A distinction is to be made between authoritative control, and mere suggestion as to the detail of the work: *Western Indemnity Co. v. Pillsbury,* 172 Cal. 807, 159 Pac. 721.

We agree, also, with the court that no custom or usage was proved which would affect the contract as written. Indeed, the matter upon which plaintiffs in error rely is, in fact, neither custom nor usage. The evidence showed only that, in order to hasten the work, miners were sometimes paid in accordance with the amount of work done, working under the control of the mine owner. This fact could have no bearing upon the contract in question, which is plain and unambiguous.

The court, in coming to its conclusion, did not vary the findings of the commission, but simply applied the law to the admitted facts. In *Good v. Johnson,* supra, this court said:

"The contract being in writing, the relation which it created between the parties thereto is exclusively within the province of the court to determine."

Finding no error in the record, the judgment is affirmed.

Judgment affirmed.

Chief Justice Hill and Mr. Justice Scott dissent.

Decided June 3, A. D. 1918. Rehearing denied December 2, A. D. 1918.