WAGNER & SONS CONSTRUCTION, INC., Petitioner,

v.

Phillip M. PAGELS and the Industrial Commission of the State of Colorado, Respondents.

No. 85CA0321.

Colorado Court of Appeals, Div. II.

Feb. 13, 1986.

Rehearing Denied March 13, 1986.

Certiorari Denied June 2, 1986.

Joyner & Fewson, P.C., George V. Fewson, Boulder, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

No appearance for respondent Phillip M. Pagels.

SMITH, Judge.

Wagner & Sons Construction, Inc. seeks review of an order of the Industrial Commission which determined that it was liable to pay unemployment insurance taxes for a category of workers known as laborers. Wagner also seeks review of the Commission's holding that neither the evidence nor the findings were sufficient to uphold the referee's determination that carpenters and carpenters' helpers (helpers) were within

covered employment. We affirm the order with respect to the laborers. We dismiss the petition with respect to the carpenters and helpers because the Commission lacked jurisdiction to consider that issue.

Wagner was a subcontractor who contracted with large residential developers to do exterior framing on new houses. The chain of events leading to this appeal began in November 1983 when Phillip Pagels, a construction laborer, filed a claim for unemployment benefits and listed Wagner as his employer. Pagels asserted that he was employed by Wagner from August to October 1983.

The Division of Employment and Training (Division) discovered that Wagner was not paying unemployment insurance taxes. Therefore, it solicited information from Wagner concerning laborers on a form F-49. On March 21, 1984, Richard Kitashima (Kitashima), an auditor for the Division, issued a "Liability Determination." The determination stated that pursuant to § 8-70-103(10)(a), C.R.S., Pagels and others performing the same or similar functions were considered to be within covered employment.

Wagner appealed the determination and a hearing before a referee was scheduled for May 31, 1984. Then, the referee ascertained that in addition to laborers, Wagner was ostensibly employing additional classes of workers, the carpenters and helpers. To avoid duplication in the hearing process, a continuance was granted to permit Kitashima, representing the Division at the hearing, to investigate the additional classes and make a determination of liability.

Subsequently, the Division obtained form F-49s from Wagner concerning the carpenters and helpers. However, when the second hearing commenced on July 10, 1984, the Division had not issued a liability determination concerning these classes. Nevertheless, the parties proceeded to present evidence on all three categories of workers.

The evidence indicated that laborers were relatively unskilled workers paid by the hour. Their principal duties included cleaning up the job site, fetching materials for skilled workers, and running errands. Laborers reported to the job in the morning and received general instructions concerning what work was to be accomplished that day. The instructions were given by a carpenter whom Wagner paid extra to function as a "foreman."

While on the job, laborers received little instruction or supervision concerning the methods of doing their job. However, one witness testified that the laborers' tasks were simple and required no instruction. There was evidence that Wagner occasionally moved laborers from job to job to meet its construction schedules.

When Wagner hired a laborer, the laborer was required to sign a "Subcontract Agreement." The laborer, as "subcontractor," agreed to perform construction services, assume liability for "insurance, taxes, and personnel," and to reimburse Wagner at the rate of $15 per hour to repair unsatisfactory work.

The evidence further indicated that laborers obtained work through word of mouth. They sought work under their own names and did not have business listings in the phone book.

Wagner was required by the general contractor to carry workmen's compensation insurance, and Wagner would deduct premium payments from a laborer's check if the laborer was not carrying his own insurance.

Wagner retained the right to terminate laborers but claimed that it did so only when the laborer was not meeting construction schedules. However, Pagels testified that Wagner terminated him for missing too many days of work.

We do not set out the evidence with respect to the carpenters and helpers because we find that the Commission lacked jurisdiction to consider those worker classifications.

Based on the evidence presented, the referee concluded that all three worker classifications were employees within the meaning of § 8-70-103(10)(a). The referee cited

Wagner's "promotion" of certain workers to foreman, Wagner's ability to "discharge" workers without liability, the payment of hourly wages, and the direction and control exercised by Wagner's president and foreman.

The Commission made additional findings of fact, and adopted the referee's conclusion that the laborers were not free of Wagner's control. Therefore, it affirmed the referee's decision that laborers were in covered employment. However, the Commission held that there was not "sufficient evidence in detail, or findings and conclusions" with respect to carpenters and helpers. Further, the Commission stated that there was "no showing of service of the notice of the hearing ... upon those of such classes." Therefore, the Commission "vacated" the referee's order insofar as it adjudicated the status of carpenters and helpers.

## I.

On review, Wagner contends that the Commission erred in holding that the evidence and findings were insufficient to adjudicate the status of carpenters and helpers. Wagner also challenges the finding that the notice of hearing was inadequate. Wagner argues that this court should hold, based on the record, that these two classes of workers were independent contractors and not in covered employment. The Commission responds that we may not consider these arguments because we lack jurisdiction.

■ We agree with the Commission that the absence of an administrative determination of liability by the Division deprived the referee, the Commission, and this court of jurisdiction. Section 8–76–113(1), C.R.S. (1985 Cum.Supp.), governing appeals from determinations of unemployment tax liability and coverage under the Employment Security Act, provides that: "No appeal shall be heard unless the notice of appeal has been postmarked or received by the division within fifteen calendar days from the date the *notice of such determination is mailed by the division to the employer.*" (emphasis added)

The foregoing statute indicates the General Assembly's intent that tax and coverage questions should be decided, in the first instance, by the Division itself. The reason for such a provision is to permit proper investigation and promote resolution without an administrative appeal.

Furthermore, failure to follow the path of administrative review established by the General Assembly is jurisdictionally fatal. *See Sanchez v. Straight Creek Constructors,* 41 Colo.App. 19, 580 P.2d 827 (1978). The requirement that the employer obtain the Division's determination of liability prior to appealing is nothing more than a requirement that it exhaust its administrative remedies. Failure to exhaust remedies is, in most cases, a jurisdictional bar to appellate review. *See Gramiger v. Crowley,* 660 P.2d 1279 (Colo.1983).

■ Wagner seeks to avoid this result by asserting that the Commission is "estopped" from raising the jurisdictional argument. Wagner contends that, at the hearing, Kitashima, as representative for the Division, consented to having the referee adjudicate the status of carpenters and helpers. Further, it argues that requiring a Division determination of the status of carpenters and helpers would be a hollow gesture. Wagner reasons that Kitashima, who issued the Division determination concerning laborers, clearly would have reached the same determination with respect to carpenters and helpers.

The fact that Kitashima may have agreed with the referee's decision to adjudicate the matter is irrelevant. Jurisdictional requirements of administrative and appellate review may not be waived, destroyed by consent, or estopped. *See Hasbrouck v. Industrial Commission,* 685 P.2d 780 (Colo.App.1984).

Neither do we think that Division consideration of these issues would be hollow. Insofar as Kitashima's conduct indicates a prejudgment of the facts concerning carpenters and helpers, we think that Wagner should seek, and the Division grant, appointment of another auditor to consider the matter. *See State Compensation In-*

*surance Fund v. Fulkerson,* 680 P.2d 1325 (Colo.App.1984).

## II.

Wagner next contends that the Commission applied the wrong legal standard in determining that laborers were in covered employment. Wagner argues for application of a federal standard based on the common law concept of employer and employee. Further, Wagner argues that the evidence does not support the finding that the laborers were subject to "control and direction" in the performance of their duties. Thus, Wagner contends that laborers were "independent contractors" rather than employees.

Sections 8–70–103(10)(a) and 8–70–103(10)(a)(I), as they existed during the relevant period of employment, provided that:

"Employment ... includes ... service performed after December 31, 1971, by an employee as defined in section 3306(i) of the 'Federal Unemployment Tax Act'.... Notwithstanding any other provision of this subsection (10), service performed by an individual for another shall be deemed to be employment, unless and until it is shown to the satisfaction of the division that:

(I) Such individual is free from control and direction in the performance of the service...." Colo.Sess.Laws 1983, ch. 82 at 429; § 8–70–103(10)(a)(I), C.R.S..

Wagner notes that the statute defines "employment" to include an "employee" under the Federal Unemployment Tax Act. Therefore, Wagner reasons that the federal definition of "employee," found in Treas. Reg. § 31.3121(d)–1, insinuates itself into the definition of "control and direction" as used in § 8–70–103(10)(a)(I). The federal regulation states that a person performing services for another is an "employee" if the relationship constitutes the common law "relationship of employer and employee." The relationship is said to exist when the recipient of services "has the right to control and direct the individual who performs the services, not only as to the result to be accomplished ... but also as to the details and means by which that result is accomplished."

Wagner argues that, under the foregoing definition, it did not "control and direct" laborers. It contends that it merely informed laborers of the overall construction goal, and left the means to the laborers.

■ Initially, we reject Wagner's argument that the federal definition of an "employee" restricts the definition of "control and direction" as used in § 8–70–103(10)(a)(I). The language of the statute indicates that "employment" includes both the common law concept embodied in the federal law, and a broader notion. This point was made in *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939), wherein our Supreme Court stated that: "[T]he Colorado act has a sufficiently independent basis, and ... the federal act does not place any limitations upon our interpretation or the guide of interpretation contained in the act itself...."

The definition of "control and direction" as used in § 8–70–103(10)(a)(I) concerns itself not with "details but with general control." *Industrial Commission v. Northwestern Mutual Life Insurance Co., supra.* Whether or not such "general control" exists is a question of fact for the Commission. *Weld County Kirby Co. v. Industrial Commission,* 676 P.2d 1253 (Colo.App.1983). We must uphold the Commission's determination if supported by substantial evidence. *Diamond Circle Corp. v. Blocher,* 691 P.2d 769 (Colo.App. 1984).

■ Here, there was evidence that Wagner paid a premium to certain carpenters to function as foremen. These foremen informed laborers of specific tasks which needed completion, and occasionally ordered laborers to different job sites. Further, Pagels' testimony indicated that he was discharged, in part, because of frequent absences. All these factors support the Commission's finding of control and direction.

While there was conflicting evidence, resolution of such conflicts was a matter for the Commission. *Weld County Kirby Co. v. Industrial Commission, supra.*

Based on this resolution of this issue, we need not address the other arguments and contentions concerning the status of laborers.

The petition to review is dismissed insofar as it seeks review of the status of carpenters and helpers. Further, all prior orders of the referee and Commission are vacated with respect to these classes of workers. The order of the Commission is affirmed with respect to laborers.

BABCOCK and METZGER, JJ., concur.