CARPET EXCHANGE OF DENVER, INC., Petitioner,

v.

THE INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Division of Employment and Training, Respondents.

No. 92CA1478.

Colorado Court of Appeals, Div. II.

March 25, 1993.

Rehearing Denied May 6, 1993.

Certiorari Denied Sept. 20, 1993.

Doussard, Hodel, Markman & Wells, Thomas G. Hodel, Lakewood, for petitioner.

No appearance for respondent Industrial Claim Appeals Office.

No appearance for respondent Div. of Employment and Training.

Opinion by Judge HUME.

Carpet Exchange of Denver, Inc., seeks review of the final order of the Industrial Claim Appeals Panel, which ruled that workers who installed floor covering pur-

chased by the company's customers were in employment covered by the Colorado Employment Security Act, § 8–70–101, et seq., C.R.S. (1986 Repl.Vol. 3B). We affirm the order in part and set it aside in part.

Under § 8–70–115(1)(b), C.R.S. (1992 Cum.Supp.), an employment relationship is presumed whenever one person performs services for another. This presumption can be rebutted if the putative employer proves both of the requirements of § 8–70–115(1)(b). *Allen Co. v. Industrial Commission*, 762 P.2d 677 (Colo.1988).

I.

■ To rebut the presumption in favor of covered employment, a putative employer must prove that a worker "is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact...." Section 8–70–115(1)(b), C.R.S. (1992 Cum. Supp.). The term, "control and direction," means a general right to control. *Allen Co. v. Industrial Commission, supra.*

■ Terminability at will, the right to terminate a worker at any time without liability, is an important factor in distinguishing employees from independent contractors on the basis of control because the right to discharge a worker gives the power to control the smallest detail and method of work. *See Allen Co. v. Industrial Commission, supra.*

Here, although there was conflicting evidence, the referee made no findings of fact on whether the workers were terminable at will, but relied on other factors. We agree with Carpet Exchange's contention that the findings of fact on those factors established that the workers were free from control and direction.

■ We note that although the definition of employment under the Colorado Employment Security Act is broader than the common law master-servant relationship, *Industrial Commission v. Northwestern Mutual Life Insurance Co.*, 103 Colo. 550, 88 P.2d 560 (1939); *Wagner & Sons Construction, Inc. v. Pagels*, 720 P.2d 987 (Colo.App.1986), the freedom from control requirement of § 8–70–115(1)(b), C.R.S. (1992 Cum.Supp.), is derived from the common law control test for distinguishing servants from independent contractors. Accordingly, although cases applying the common law control test are not determinative, they are relevant in determining whether workers are free from control under § 8–70–115(1)(b).

■ The common law control test is also used to distinguish independent contractors from employees under the Workers' Compensation Act, § 8–40–101, et seq., C.R.S. (1992 Cum.Supp.) *See Industrial Commission v. Bonfils*, 78 Colo. 306, 241 P. 735 (1925). Workers' compensation cases are therefore also relevant here. *See Allen Co. v. Industrial Commission, supra.*

■ Servants or employees are subject to control over the means and methods of the work as well as the ends or results. *See Farmers Reservoir & Irrigation Co. v. Fulton Investment Co.*, 81 Colo. 69, 255 P. 449 (1927); *Arnold v. Lawrence*, 72 Colo. 528, 213 P. 129 (1923). Independent contractors, however, are not free of all control. They may be subject to control sufficient to ensure that the end result contracted for is reached, even though they are not subject to control over the means and methods of accomplishing that result. *See Industrial Commission v. Maryland Casualty Co.*, 65 Colo. 279, 176 P. 288 (1918); Restatement (Second) of Agency § 220, comment e (1958); 1B A. Larson, *Workmen's Compensation Law* §§ 44.21 to 44.23 (1992).

■ Consequently, the floor plans or diagrams given to the workers here when they accept a job do not support the existence of general control over the means of doing the work because they simply define the job to be done or the result to be accomplished.

■ This is also true of the company's requirement that the workers obtain company approval of any additional work requested by customers if they expect to be paid for the extra work by the company;

this simply redefines the job or result contracted for, rather than demonstrating general control over means and methods.

■ Similarly, the company's right to inspect the work, its requirement that the workers remedy customer complaints without further pay, and its retention of $600 from the workers' pay to cover the cost of remedial work that might later be performed by other installers do not indicate control over the methods of performing the work. Rather, these factors are designed only to ensure the end result.

The referee expressly found that the workers provided their own equipment and vehicles and had complete control over their helpers, both of which are factors showing lack of control by the company. *See Brush Hay & Milling Co. v. Small*, 154 Colo. 11, 388 P.2d 84 (1963); Restatement (Second) of Agency, *supra*, at § 220(2)(e) and comment k; 1B Larson, *supra*, at § 44.34.

■ The company's requirement that installers be covered by workers' compensation insurance is not evidence of an employment relationship because independent contractors may be deemed employees under §§ 8-41-401 and 8-41-402, C.R.S. (1992 Cum.Supp.), the statutory employment provisions of the Workers' Compensation Act. Alternatively, independent contractors are often required to provide such coverage as a condition of their contracts.

■ The only facts found by the referee that support the existence of a right of control by the company over the means of performing the work were the requirements that the workers report to the warehouse by 8:30 a.m. to obtain work for that day and call customers by 9:00 a.m. to schedule the installation and the general "ethics guidelines" that set a minimal dress code, forbade foul language and drinking on the job, and excluded children from job sites.

However, this kind of control does not constitute control over the means and methods of installing floor covering. To the contrary, the facts found by the referee establish that the workers were free from control over the means and methods of performing that work.

## II.

■ To satisfy the second requirement of § 8-70-115(1)(b), C.R.S. (1992 Cum. Supp.), the putative employer must prove the worker "is customarily engaged in an independent trade, occupation, profession, or business related to the service performed." To be customarily engaged in an independent business, a worker must actually and customarily provide similar services to others at the same time he or she works for the putative employer. *Locke v. Longacre*, 772 P.2d 685 (Colo.App.1989); *See National Claims Associates, Inc. v. Division of Employment*, 786 P.2d 495 (Colo.App.1989).

■ The purpose of this requirement is to protect the security of workers who receive substantially all of their earnings from one employer. *Locke v. Longacre, supra.* Accordingly, performance of occasional or insubstantial services for others does not establish that a worker is *customarily* engaged in an independent trade, occupation, or business. *See National Claims Associates, Inc. v. Division of Employment, supra.*

■ Here, although most of the workers who testified at the hearing performed occasional installations for others, they performed substantially all of their installation work for Carpet Exchange and were, therefore, not customarily engaged in the business independent of their relationship with the company. Although the workers were free from control and direction, they were not engaged in an independent business and were, therefore, in covered employment.

However, the referee found that Don Ticknor and Mike Moros performed a substantial percentage of their services for others during their relationship with Carpet Exchange. Although they may have lacked some of the indicia of an independent business, such as offices, their actual performance of a substantial proportion of their installation work for others compels the conclusion that they were actually and customarily engaged in that business inde-

pendent of their relationship with Carpet Exchange.

Thus, these two workers were both free from control and direction and customarily engaged in an independent installation business and were therefore not in covered employment.

The order is set aside as to Don Ticknor, Mike Moros, and other similarly situated installers, if any, and affirmed as to all other installers.

STERNBERG, C.J., concurs.

TURSI, J., dissents.

Judge TURSI dissenting.

I respectfully dissent from that part of the majority opinion which sets aside in part the final order of the Industrial Claims Appeals Panel.

Decisions of the Panel may be set aside only upon the following grounds; that it acted without or in excess of its powers; that the decision was procured by fraud; that the findings of fact do not support the decision; or that the decision is erroneous as a matter of law. *See* § 8–74–107(6), C.R.S. (1986 Repl.Vol. 3B).

My review of the record leads me to agree with the Panel's final order, in which it stated:

The hearing officer's findings of fact are not contrary to the weight of the evidence in the record, so we must uphold them. *See Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268 (Colo. 1990). Carpet Exchange is in the business of selling floor coverings, and it contracted with Cliff Akins and others to perform installation services for its customers. Installers obtain work by appearing at Carpet Exchange premises, where job assignments are offered each day. The hearing officer found that the installers sign agreements with Carpet Exchange which contain 'specific instructions.' Among other things, the agreements provide that installers must appear for jobs and not inconvenience customers; set forth timeliness requirements for performing repairs; require that installations be performed pursuant to diagrams provided by Carpet Ex-

change; set forth expectations for dress and requirements for the disposal of scraps; and prohibit children under the age of fourteen from being on the job site.

The hearing officer further found that Carpet Exchange generally establishes the amount that will be paid for installation work, although the amount may be subject to some negotiation. The hearing officer found that the customers pay Carpet Exchange for the services upon completion of the work, and that Carpet Exchange then pays the installers on the first and fifteenth day of each month. The hearing officer found that the installers generally identify themselves as working for Carpet Exchange, and that any complaints about the installation work are directed to Carpet Exchange, which then requires the installer to make repairs or corrections. Carpet Exchange guarantees the installation for one year, and the installers are required to pay a retainer fee, which may used by Carpet Exchange to offset the costs of any repairs or corrections. The hearing officer found that Carpet Exchange has the right to inspect the installation work, and has called customers in the past to determine if the installation was satisfactory.

The hearing officer further found that several of the installers use business names, but do not have separate business accounts and are paid in their own names. Many of the installers testified that they do not advertise their services, and that they perform all or substantially all of their installation services for Carpet Exchange.

Section 8–70–115(1)[, C.R.S. (1992 Cum. Supp.)] provides that service performed by an individual for another is deemed to be employment unless it is shown that the individual is free from control and direction in the performance of the service and that he is customarily engaged in an independent trade, occupation, profession, or business related to the service. The hearing officer concluded that the evidence failed to establish that either requirement was satisfied here, and we perceive no error in this determination.

In our view, the aforementioned findings and the evidence establish Carpet Exchange's general *right* to control the performance of installation services, *see Allen Company, Inc. v. Industrial Commission,* 762 P.2d 677 (Colo.1988), and support the hearing officer's conclusion that the first requirement of the statute has not been satisfied....

Further, I agree with the Panel that findings supported the conclusion that the individuals involved were not customarily engaged in a related trade or business independent of their performance or service for Carpet Exchange and that, though some of the installers performed some installation work for others, it does not compel a determination that they were *customarily* engaged in an independent trade or business. *See Locke v. Longacre,* 772 P.2d 685 (Colo. App.1989).

Accordingly, since the Panel was not acting without or in excess of its authority, since its decision was not procured by fraud, and since there were findings of fact in support of its decision, I cannot conclude that the decision is erroneous as a matter of law. Therefore, I would affirm the order in its entirety.