**Cliff POWELL and Terry Sullivan, Plaintiffs,**

**v.**

**CITY AND COUNTY OF DENVER, COLORADO, Rocky Mountain Planned Parenthood, Inc., Gary Jamieson and Michael Newell, Defendants.**

**Civil No. 94–WM–2572.**

United States District Court, D. Colorado.

Aug. 4, 1997.

Thomas A. Meyers, Denver, CO, David R. Huggins, National Legal Foundation, Memphis, TN, for Plaintiffs.

Robert M. Liechty, Halaby Cross Liechty Schluter & Buck, Denver, CO, for the City and County of Denver and Gary Jamieson.

Stuart Pack, Denver, CO, F. Brittin Clayton III, Clayton and Stone, L.L.C., Boulder, CO, Kevin C. Paul, Planned Parenthood of the Rocky Mountains, Inc., Denver, CO, for Rocky Mountain Planned Parenthood.

Jennifer L. Viega, Dennis Hanson, Wood, Ris & Hames, P.C., Denver, CO, for Michael Newell.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This matter is before me on the following motions: (1) the motion of defendant Rocky Mountain Planned Parenthood, Inc. ("RMPP") for partial summary judgment; (2) the motion of the defendant City and County of Denver, Colorado ("City") for summary judgment; (3) defendant Michael Newell's motion *in limine;* and (4) the City's motion *in limine.* I will address these motions *seriatim.*

### I

#### *Background*

Plaintiffs are antiabortion protesters who regularly picket and demonstrate at a clinic

operated by RMPP in Denver. Defendant Gary Jamieson is the associate director of RMPP. Mr. Newell is retained by RMPP to provide security consulting services to RMPP.

Plaintiffs allege that over several years, the City, through its police officers, has repeatedly and unconstitutionally arrested, prosecuted, and otherwise harassed plaintiffs in violation of 42 U.S.C. § 1983. In contrast, according to plaintiffs, the City has provided police protection to RMPP and its employees, failed to prosecute lawbreakers affiliated with RMPP, and otherwise preferentially treated RMPP.

In addition to a number of alleged incidents of improper arrest, excessive use of force, and harassment against antiabortion protesters, the claims in this case are based on an altercation which occurred on October 5, 1994. The parties agree that, on that date, Messrs. Newell and Jamieson became involved in a scuffle with plaintiffs and another protester David Lane.[1] The parties dispute who started the altercation.

Plaintiffs further allege that following the altercation, Messrs. Powell and Lane were taken to a hospital, whereupon Denver Police officers handcuffed them to their hospital beds and interrogated them without reading their Miranda rights. Upon release from the hospital, Denver Police officers allegedly took Mr. Powell to the police station where he was given Miranda warnings and interrogated. Mr. Powell was eventually arrested on October 22, 1994, pursuant to a warrant and charged with assault and the destruction of public property. It is alleged that those criminal charges were resolved in favor of Mr. Powell.

## II.

### Standard of Review

Summary Judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of any issue of material fact. If that burden is met, the opponent has a burden of presenting specific facts which show that there is a genuine, material issue for trial. In doing so, the opponent "may not rest upon the mere allegations or denials of the adverse party's pleading...." Fed. R.Civ.P. 56(e). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410 (10th Cir.1993). Ultimately, summary judgment is improper if, viewing the facts before the court in a light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, a reasonable jury could find in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III.

### RMPP's Motion for Partial Summary Judgment

In the Trial Preparation Conference plaintiffs stipulated that their claims against RMPP and Messrs. Jamieson and Newell all arise out of the October 5, 1994 altercation. Those claims are as follows: Mr. Powell brings claims of assault and battery and intentional-infliction of emotional distress against Mr. Newell, individually, and against RMPP, as his alleged employer; and Mr. Sullivan brings claims of assault and battery and intentional infliction of emotional distress against Mr. Jamieson, individually, and RMPP, as his employer. RMPP seeks dismissal of Mr. Powell's claims against RMPP. Those claims are based on the actions of Mr. Newell and assert liability against RMPP on a theory of *respondeat superior*[2] RMPP ar-

---

1. Mr. Lane was originally a plaintiff in this suit. However, his claims were dismissed with prejudice, pursuant to his stipulation on February 29, 1996.

2. It is also alleged that RMPP is liable to Mr. Powell on the theory that Mr. Newell was RMPP's agent. An agent is one who represents (and may bind) the principal contractually. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 472 (Colo.1995). Mr. Powell does not claim that RMPP is contractually liable for the actions of Mr. Newell. Therefore, there is no basis for plaintiffs' claim that RMPP is liable because Mr. Newell is its agent.

gues that the undisputed facts show that Mr. Newell was an independent contractor, whose wrongs may not be imputed to RMPP.

■ Generally, a party is not liable for the torts of its independent contractors. *Huddleston v. Union Rural Electric Ass'n,* 841 P.2d 282, 286 (Colo.1992). Employers, however, are liable for the unauthorized torts of their employees committed within the scope of the employment relationship. *Grease Monkey Int'l, Inc. v. Montoya,* 904 P.2d 468, 473 (Colo.1995). Thus, it must be determined whether Mr. Newell was an independent contractor or an employee.

■ Under Colorado law, "[a]n independent contractor is one who engages to perform services for another, according to his own methods and manner, free from direction and control of the employer in all manners relating to the performance of the work." *Scott Wetzel Serv., Inc. v. Johnson,* 821 P.2d 804, 814 (Colo.1991) (Rovira, C.J., dissenting) (citations omitted). "Independent contractors, however, are not free from all control. They may be subject to control sufficient to ensure that the end result contracted for is reached, even though they are not subject to control over the means and methods of accomplishing that result." *Carpet Exchange of Denver, Inc. v. Industrial Claim Appeals Office,* 859 P.2d 278, 281 (Colo.App.1993) (citations omitted). By contrast, an employee is "subject to control over the means and methods of work as well as the ends and results." *Id.* (citations omitted).

■ The federal courts have developed a more expansive test for determining whether an individual is an employee or an independent contractor. The focal point of the inquiry is "whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself." *Dole v. Snell,* 875 F.2d 802, 804 (10th Cir.1989) (quotation and citation omitted). Six factors are considered in making that determination: (1) the degree of control exercised by the employer over the work; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the business relationship; (5) the degree of skill the work calls for; and (6) the extent to which the work is integral to the employer's business. *Id.* at 805 (citation omitted).

■ By deposition, RMPP presented the following facts that Mr. Newell was an independent contractor: he has been a security consultant since 1979; he owns his own company and has several clients including several not concerned with abortion; and he has consulted with 65 abortion clinics throughout the United States, as well as the National Abortion Federation and Planned Parenthood Federation of America. In Colorado, Mr. Newell has acted as a contract security consultant for two abortion doctors and another-clinic in-addition to his work for RMPP.

RMPP initially retained Mr. Newell to provide security services and advice during Pope John Paul II's visit to Denver in 1993. Since then, he has provided services and advice to RMPP on a "sporadic and ... as-needed basis," working there only 10–20 hours per week on average.

Throughout his relationship with RMPP, Mr. Newell has billed for the services requested by RMPP. He was not on salary, nor given any employment benefits, insurance or otherwise. RMPP did not give Mr. Newell any training, nor did it provide him with instruction on how he was to perform his services.

With the above submissions, RMPP met its initial burden of establishing that there is no question of material fact that Mr. Newell was an independent contractor as a matter of law. It was thus incumbent on defendant Powell to respond with specific facts demonstrating that there is a genuine issue of fact. In an attempt to do so, he makes four assertions.

First, he claims that the facts regarding the October 5, 1994 altercation are in dispute—which they are. However, those facts are not material to the independent contractor issue and, therefore, have no bearing on this question.

Second, Mr. Powell argues that Mr. Newell's deposition raises a question of fact regarding whether he was an employee when he stated that his "responsibility was to—in the chain of command, if you'll have it—was

direct contact with Mr. Jamieson." However, when viewed in context, Mr. Newell merely stated the obvious. As a service provider, he reported to Mr. Jamieson, who was in the RMPP hierarchy. That statement alone cannot establish employment status or even suggest a genuine dispute of fact.

Next, plaintiff Powell reaches for a dispute of fact from Mr. Jamieson's testimony that he "generally" did not give security personnel instruction on how to perform their tasks, claiming a necessary implication that sometimes he did provide instruction. However, Mr. Jamieson later clarified that he only provided instruction as to specific security requirements that RMPP might have. Thus, the instruction Mr. Jamieson gave only related to the end result desired by RMPP, which is wholly consistent with independent contractor status. *Carpet Exchange of Denver, Inc.*, 859 P.2d at 281.

Finally, Mr. Powell seeks to infer an employer-employee relationship from Mr. Jamieson's testimony that RMPP had the "final authority as to what strategies or techniques are going to be carried out concerning security of the facility" and that "as the payor" it has the final decision-making authority. Those statements, however, reflect no more control than anyone might have over an independent contractor. Indeed, any owner or person who contracts to have services or work performed retains that ultimate authority.

Therefore, the undisputed facts in the record establish that Mr. Newell was an independent contractor. Nevertheless, plaintiff Powell raises three alternative theories for RMPP's liability even if defendant Newell was an independent contractor.

■ First, Mr. Powell claims that the services Mr. Newell provided constitute an in-herently dangerous activity[3] Colorado has adopted the Restatement (Second) of Torts § 427, which "carves out a limited exception to the general rule of nonliability for the negligence of an independent contractor." *Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282, 288 (Colo.1992). However, that section only creates a rule of vicarious liability for an independent contractor's negligence in the performance of an inherently dangerous activity, not for an independent contractor's intentional torts. *See id.* Here, Mr. Powell makes intentional tort claims, and, hence, the exception for negligence liability on the basis of an inherently dangerous activity is unavailing.[4]

■ Mr. Powell also claims RMPP may be liable on a theory that the danger in Mr. Newell's work was foreseeable. For that proposition, Mr Powell cites *Sewell v. Public Service Co.*, 832 P.2d 994 (Colo.App.1991), which holds that it is improper to enter summary judgment based on a lack of a duty of care if differing factual inferences may be drawn from the evidence on the question of foreseeability. However, the concept of duty of care based on foreseeability is not an exception to the rule that an independent contractor's torts may not be imputed to the employer. Therefore, it provides no basis for RMPP's liability.

Mr. Powell's final theory of vicarious liability is that RMPP ratified Mr. Newell's actions. "An employer can assume liability for the tortious conduct of its employee by approving or ratifying such conduct, irrespective of whether that conduct is intentional or negligent." *DeBose v. Bear Valley Church of Christ*, 890 P.2d 214, 230 (Colo.App.1994), *rev'd on other grounds*, 928 P.2d 1315 (Colo.1996). The employer there had received

---

**3.** There is some irony in the proposition that providing security is an inherently dangerous activity with respect to third parties.

**4.** Mr. Powell did not raise his inherently dangerous activity theory of liability until his response to the motion for partial summary judgment. (His complaint contained no such allegations.) Such a belated claim prejudices RMPP because it was deprived of the chance to discover facts and obtain expert testimony that might have disposed of Mr. Powell's argument. Accordingly, this circumstance also justifies dismissal of any claim of

liability on the basis of an inherently dangerous activity. *See e.g., Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir.1991) (holding a plaintiff may not plead new theory of liability for first time in a summary judgment motion where allowing such would cause prejudice to defendants); *Huddleston v. Lumbermens Mutual Casualty Co.*, 942 F.Supp. 504, 510 (D.Kan.1996) ("Although plaintiff need not state precisely each element of the claim, she must plead minimal factual allegations on those material elements to be proved.").

complaints about the tortious conduct of one of its employees before that employee committed a similar tort against the plaintiff. *Id.;* 928 P.2d at 1318–20. Despite the complaints, the employer did not take action against the employee until some time after the employee had committed torts against the plaintiff. *Id.* at 231. Therefore, the court held there was evidence from which a jury could infer ratification. *Id.*

Ratification is inapplicable here. First, ratification has only been found in the context of an employer-employee relationship, not one of employer-independent contractor. *See id.* Even if it could, there is no evidence that Mr. Newell had previously engaged in any conduct of the nature alleged to have occurred on October 5, 1994. Additionally, it has not yet been determined that Mr. Newell did anything improper on October 5, 1994. Therefore, RMPP did not have the full knowledge of the character of Mr. Newel's acts necessary to find ratification. Moreover, the undisputed facts show that since the altercation Mr. Newell no longer accompanies RMPP personnel outside of the clinic or comes into contact with protesters. Therefore, there can be no inference that RMPP has ratified Mr. Newell's acts.

In summary, the undisputed facts establish that Mr. Newell was an independent contractor of RMPP. Therefore, RMPP is not liable for the acts of Mr. Newell as a matter of law.

### IV.

### *City's Motion for Summary Judgment*

As set forth in the Pretrial Order, plaintiffs bring several claims against the City based on 42 U.S.C. § 1983, claiming the City deprived them of (1) equal protection, (2) due process, (3) their First Amendment rights to free speech and assembly, and (4) their Fourth Amendment rights to be free from unreasonable search and seizure. The City moves for summary judgment on those claims asserting that it may not be held liable under § 1983 absent proof that the person or persons with authority to set police department policy chose a policy, express or tacit, of unconstitutional conduct which had the effect of depriving plaintiffs of their constitutional rights.

The touchstone of § 1983 municipal liability is that official policy is responsible for a deprivation of rights protected by the Constitution. *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). That policy may be embodied in an official enactment or may be reflected in "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 691, 98 S.Ct. at 2036. What is essential to the action against a municipality is proof of "a deliberate choice to follow a course of action ... from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (citation omitted). Section 1983 liability may not be imputed against a municipality on the basis of *respondeat superior. Monell* at 691, 98 S.Ct. at 2036.

There is no "official enactment" at issue here and the question is whether "governmental custom" deprived plaintiffs of their rights. For this Circuit, *Gates v. Unified School Dist. No. 449,* 996 F.2d 1035 (10th Cir.1993), distills the requirements for such municipal liability to a three part test:

To establish a case based on custom, a plaintiff must prove:

(1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the ... [municipality's] employees;

(2) Deliberate indifference to or tacit approval such misconduct by the ... [municipality's] policymaking officials ... after notice to the officials of that particular misconduct; and

(3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the ... [municipality's] custom and that the custom was the moving force behind the unconstitutional acts.

*Gates v. Unified School Dist. No. 449,* 996 F.2d at 1041.

For purposes of its motion, the City concedes that there is a question of fact

regarding the first element, the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the City's employees, and focuses its argument on the second Gates element, claiming there is no proof that the relevant policy maker, the Chief of Police, showed deliberate indifference to or tacit approval of the unconstitutional conduct after notice of the misconduct. Although there is a lack of direct evidence of notice of the alleged constitutional deprivations followed by indifference or tolerance, I cannot disregard possible inferences to the contrary.

A point of reference must be *Cannon v. City and County of Denver,* 998 F.2d 867 (10th Cir.1993): The court held that a policy or custom resulting in the violation of constitutional rights could be inferred from several allegations by antiabortion protesters of unconstitutional conduct against them, precluding summary judgment:

> Although the incidents do not conclusively prove the existence of a general municipal practice of First Amendment violations against antiabortion protesters, when seen in a light most favorable to the plaintiffs we agree that they are evidence from which the trier of fact could reasonable infer the existence of such a policy.... Here, when all of the plaintiffs' evidence is considered, it is sufficient, if believed, to support a finding that the City and the Police Department followed a policy or custom resulting in violation of plaintiffs' constitutional rights....

*Id.* at 878.

The record in this case presents an even greater number of alleged incidents of unconstitutional conduct against antiabortion protesters. (By affidavit, plaintiffs detailed several alleged instances of unconstitutional arrests.) Certainly, *Cannon* prescribes that an unlawful policy may be inferred from such evidence. *Cannon* also implies that proof of direct notice to the policy maker is not necessary in a case like this where there is a question of fact of a continuing, persistent and widespread practice of unconstitutional misconduct. *See also Jojola v. Chavez,* 55 F.3d 488, 491 (10th Cir.1995) (holding that constructive knowledge may be imputed where the underlying unconstitutional conduct is so widespread or flagrant that the policy maker should have known of it in the proper exercise of official responsibilities). In short, I don't see how summary judgment could be warranted here when it was improper in *Cannon.*

In summary, there is a genuine issue of fact as to whether the City had a policy which was responsible for the deprivation of plaintiffs' rights protected by the Constitution.

## V.

### *Mr. Newell's Motion In Limine*

Mr. Newell moves to exclude evidence of any charges for use of excessive force made against him as a police officer or security officer before he began to work as a security consultant. Plaintiffs have not responded to this motion. Under Fed.R.Evid. 404, plaintiffs are precluded from introducing evidence of alleged prior instances of Mr. Newell's use of excessive force to show that he was disposed to the use of excessive force during the October 5, 1994 altercation. Therefore, unless plaintiffs have some other proper purpose for such evidence, it is inadmissible.

## VI.

### *The City's Motion In Limine*

The City moves to exclude evidence of all incidents of alleged unconstitutional conduct that took place more than two years before plaintiffs filed their complaint because of the two year statute of limitations applicable to plaintiffs' § 1983 claims and changes in the positions of Chief of Police and District Captain.

The fact that the identity of the officials in charge of setting the City's policy changed in 1992 does not conclusively demonstrate that the City's actions thereafter were not the result of an ongoing policy established prior to the change in personnel. Therefore, evidence of events prior to November 1992 may be relevant to plaintiffs' claims that the City followed a policy or custom resulting in the violation of their constitutional rights. Fed. R.Evid. 401. And, because the statute of limitations presents no bar to relevant evidence of events that occurred more than two

years before plaintiffs filed suit, the City's motion is without merit.

Accordingly it is ORDERED as follows:

1. RMPP's Motion for Partial Summary Judgment is GRANTED;

2. Summary judgment is entered in favor of RMPP on all of Mr. Powell's claims against RMPP based on the acts of Mr. Newell and those claims are dismissed with prejudice;

3. The City's Motion for Summary Judgment is DENIED;

4. Mr. Newell's Motion *In Limine* is GRANTED; and

5. The City's Motion *In Limine* is DENIED.